**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William X. BECKHAM, a/k/a William X. Motley, William 56X, William Moore and Jerry Moore, Defendant-Appellant.**

**No. 74–1782.**

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1975.

**1318**

George L. McWilliams, Texarkana, Tex. (Court-appointed), for defendant-appellant.

Roby Hadden, U. S. Atty., Tyler, Tex., J. C. Hawthorn, Charles E. Myers, Asst. U. S. Attys., Beaumont, Tex., for plaintiff-appellee.

Before TUTTLE, RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

William X. Beckham was indicted in Texas on fifteen counts of stealing, possessing and obstructing the flow of the mails in violation of 18 U.S.C. 1702 and 1708. At trial, Beckham was found guilty on six counts, the remaining counts being dismissed on motion of the government. Defendant thereafter perfected this appeal, complaining that evidence should have been excluded since seized in violation of the Fourth Amendment, that an in-court identification should have been disallowed, and that his Sixth Amendment right to speedy trial was denied.

On June 3, 1971, a black man riding a bicycle and dressed in blue jeans, a red hat, a white shirt and a red tie was observed by Ernest Watson removing mail from the mail box of Mrs. Clara L. Davis. When Mrs. Davis returned home, Mr. Watson informed her of the incident. She notified the police; Mr. Watson gave them a description. Later that day police officers stopped Beckham, who was riding his bicycle and dressed as described. Beckham agreed to accompany the officers to Mrs. Davis' home. On the way, the officers decided to search Beckham's bicycle basket. The missing mail was found in the basket. Beckham contends that this search was an unconstitutional one and that the mail should have been excluded as evidence at trial. The trial court found that Beckham had voluntarily consented to the search.

One established exception to the Fourth Amendment's warrant and probable cause requirements is the search conducted with consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Garcia, 496 F.2d 670, 673 (5th Cir. 1974). The existence of consent is a question of fact to be determined from the totality of circumstances. Schneckloth v. Bustamonte, *supra*, 412 U. S. at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854. The prosecutor's burden [1] of showing voluntary consent is met here. Officer McCombs testified that Beckham had given his consent; both Officer McCombs and Officer Pilant had testified that Beckham was cooperative from the initial contact and had agreed to allow Mr. Watson a chance to identify him. Beckham was not under arrest at the time of the search. In any case, custody is only one fact to be taken into account. United States v. Garcia, *supra*, 496 F.2d at 673. Not surprisingly, appellant denies he gave consent and points out that it defies logic to find that one who denies guilt would consent to a search knowing that incriminating evidence will be found. Be that as it may, Beckham had already consented to allow Mr. Watson an attempt at identification. At trial, eyewitness identification could be as damning as evidence of possession of the stolen mail. We cannot say that the trial court, called on as it was to determine the witnesses' credibility, erred in finding voluntary consent.

Appellant next contends that the identification procedure used after the arrest was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny him due process. Further, he says, no counsel was present at the identification as constitutionally required, and, as a result, Watson's in-court identification was improperly admitted. Assuming that the identification procedure used by the police was unnecessarily suggestive, there was still no constitutional violation. Not only must the identification procedure be unnecessarily suggestive, but

---

[1]. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

also, the procedure must have created "a substantial risk of misidentification." Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972); Rudd v. Florida, 477 F.2d 805, 809 (5th Cir. 1973). *See also* United States v. Allen, 497 F.2d 160 (5th Cir. 1974). Watson testified that he knew Beckham before the mail theft, that he had bought papers from him previously and that Beckham was the only person so dressed whom he had ever seen in the neighborhood.[2] He saw Beckham remove the mail from Mrs. Davis' mailbox across the street during daylight hours. Each identification was certain. Finally, on cross-examination Watson rejected the idea that he had identified the culprit as Beckham solely on the basis of his costume.[3] Given Watson's positive identification at trial and his previous acquaintance with Beckham, the risk of mistake was small and the in-court identification stands. United States v. Sutherland, 428 F.2d 1152, 1156 (5th Cir. 1970). Finally, there was no right to counsel at the show-up since no adversary judicial criminal proceedings had been initiated at the time. Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); United States v. Abshire, 471 F.2d 116, 119 (5th Cir. 1972).

 Appellant's contention that he was denied the right to a speedy trial fares no better. Beckham was arrested and a complaint filed in 1971. At the hearing Beckham revealed that he was wanted for homicide in Pennsylvania. Subsequently, the complaint was dismissed in favor of the Pennsylvania prosecution. Beckham waived extradition. When the Pennsylvania charges were later dropped, the United States Attorney for the Eastern District of Texas reopened the mail tampering case. Beckman was indicted in 1973 and convicted in 1974 on the Texas charges. In this case Beckham was arrested, released and again arrested. Given the intervening release, this circuit's post-arrest, pre-indictment test for speedy trial may not apply, and appellant could be restricted to a due process complaint. We need not decide which standard is appropriate. Due process would be violated if in addition to showing substantial actual prejudice the accused could show that the prosecution had intentionally employed the delay to gain a tactical advantage. United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Zane, 489 F.2d 269, 270 (5th Cir. 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1975, 40 L. Ed.2d 310 (1974). Under our post-arrest, pre-indictment test, defendant is required to make a substantial showing of actual prejudice if the limitations period has not run. United States v. Palmer, 502 F.2d 1233, at 1235 (5th Cir., 1974); United States v. Zane, *supra*. On either theory, substantial actual prejudice—absent here—is required. Beckham testified that, because of the lapse of time and his impression that he had no need to preserve his defense after the 1971 dismissal of charges, he was unable to remember the names of people who might aid him in his defense. However, he failed to indicate how those people would have been able to assist his case. "A general allegation of loss of witnesses and failure of memories is insufficient to establish prejudice." United States v. Zane, *supra*. Beckham also

2. The distinctive clothing worn by Beckham was the garb worn by all Black Muslims in the area.

3. Q. These are members of the Muslem religion that you mentioned a few minutes ago.
A. Yes.
Q. And you could identify them as such primarily by the way they dressed, could you not?

A. I know people. I don't know—you know, I know my people.
Q. All right.
A. And I know their favor and everything so I don't have to guess about it. I know them.
Tr. 83.

testified to mental anguish on learning that he had been indicted on the Texas charges. Personal hardship can be considered, United States v. Palmer, *supra* at 6; however, this was not a period of extended mental suffering since Beckham had for two years thought the 1971 dismissal permanent. Moreover, since he was not under arrest or detainer as a result of the Texas crime, his liberty was not curtailed during the two-year period.[4] Any anxiety during the two-year period likely resulted from the Pennsylvania murder charges, not the Texas mail-tampering ones. His feeling of distress on learning of the Texas indictment in 1973 does not rise to the level of substantial actual prejudice.

■ There remains one issue which requires development on remand. Beckham testified that he had waived extradition in return for the government's dismissal of the charges.[5] The government made no reference to a bargain; however, the government did state that Beckham informed the Texas Magistrate that he was wanted for homicide in Pennsylvania and that the mail theft charges were then dismissed in favor of the Pennsylvania prosecution. The record contains no finding of the existence vel non of a bargain, nor any consideration by the trial court of the possible impact of such principles of prosecutorial good faith as are instanced by Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We remand for findings of fact and conclusions of law on this issue.

Affirmed in part, remanded in part.

4. "But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. *Arrest* is a public act that may seriously interfere with the defendant's liberty, whether he is *free on bail or not*, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and friends."

United States v. Marion, 404 U.S. 307, 321, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) (emphasis added).

5. Q. And you waived extradition and went back to Pennsylvania under the belief that the charges would be dropped and forgotten about?
A. This is the offer that was provided for me and I accepted it.
TR. 283.