UNITED STATES of America,
Appellee,

v.

Patrick Vincent **BUTLER**, Defendant,
Appellant.

No. 7452.

United States Court of Appeals,
First Circuit.

Heard May 6, 1970.

Decided June 3, 1970.

Joseph T. Travaline, Somerville, Mass., by appointment of the Court, Edward S. Guidoboni, Somerville, Mass., on brief, for appellant.

Frederick W. Faerber, Jr., Asst. U. S. Atty., Providence, R. I., Lincoln C. Almond, U. S. Atty., Providence, R. I., on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

On January 9, 1968, a federally-insured bank located in North Providence, Rhode Island, was robbed by two men, one of whom remained in the getaway car. Defendant, who was identified by six witnesses as the man who entered the bank, was convicted of the crime and appeals. He assigns four grounds as error. He first claims that pre-trial photographic identifications made by four witnesses were improperly suggestive and vitiated subsequent in-court identifications because the government failed to sustain its burden of establishing an independent basis for the in-court statements. Second, it is argued that due process required the presence of counsel at any pre-trial photographic identification under the teachings of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and that evidence of the photographic identifications was therefore improperly admitted. Third, it is contended that the failure of the police to hold a lineup in lieu of the photo identification sessions constituted a denial of due process. Finally, we are asked to reverse the conviction because of unconstitutional delay between defendant's indictment and arraignment.

We begin with the photographic identifications. Six persons who were present in the bank at the time of the robbery identified the defendant in court. Of these, four had previously selected photographs of the defendant from groups shown them by F.B.I. agents under circumstances which defendant claims were suggestive. For purposes of decision we shall asume that the photographic showings by the F.B.I. failed to meet the standard set in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This established, the issue is whether there was clear and convincing evidence of an independent basis for the in-court identifications. United States v. Johnson, 412 F.2d 753, 754 (1st Cir. 1969); see United States v. Wade, supra, 388 U.S. at 241, 87 S.Ct. 1926. Relevant criteria were set out in *Wade* and include:

> "the prior opportunity [of the witness] to observe the alleged criminal act, the existence of any discrepancy between any pre- [photo identification] description and the defendant's actual description, any identification prior to [photo identification] of another person, * * * failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the [photo] identification." 388 U.S. at 241, 87 S.Ct. at 1940.

Much is common to the four challenged witnesses. The bank was robbed in daylight hours and, despite the absence of direct testimony on the point, it is therefore fair to infer that the bank was well lighted. The witnesses were apparently all in positions from which they could see the robber clearly, one as close to him as five feet. All had several minutes in which to observe the robber, who was surely the center of attention under the circumstances, particularly as he was armed and fired a pistol shot. All were bank employees and there was evidence that the employees were trained to observe a robber carefully for possible identification if the occasion were to arise. All gave roughly similar descriptions of

the robber to the F.B.I. and there was no evidence that defendant failed to meet the descriptions.

■ The factors enumerated above weigh heavily in favor of the admissibility of the subsequent in-court identifications. Moreover, the witnesses' identifications were definite and unshaken by extensive and searching cross-examination. Accordingly the delay between the crime and the identifications is, of itself, insufficient to prevent us from concluding that the witnesses' in-court identifications were independent of their photographic identifications.[1]

■ Our resolution of the courtroom identification question makes it unnecessary for us to deal with defendant's second and third arguments.[2] Even if the pre-trial viewing of a spread of photographs is a "critical stage" requiring the presence of counsel, it is apparent that defendant was in no way prejudiced by counsel's absence in this case. To the extent that the argument depends upon a defect in the in-court identifications it is rejected by our finding that those were independently based. To the extent it depends upon the introduction before the jury of evidence of tainted photographic identifications it is without merit, as we think there is no reasonable possibility that the jury gave determinative weight to such out-of-court identifications where six witnesses, two of whom had not made photo identifications, identified the defendant before the eyes of the jurors. *See* Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Gilbert v. California, 388 U.S.

263, 274, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Note, Harmless Constitutional Error: A Reappraisal, 83 Harv.L.Rev. 814, 818–20 (1970).

Defendant's speedy trial contention is substantial. He was indicted on September 27, 1968, but was not arraigned until June 17, 1969, despite the fact that he was in federal custody throughout that period. On oral argument the government admitted that there was no reason for the delay other than defendant's incarceration and the government's supposition that any new sentence would be consecutive and that defendant could not, therefore, be harmed by the delay. It is clear that the delay is in no way attributable to actions of the defendant. Moreover, the parties are agreed that the arraignment finally took place only after the defendant, on May 24, 1969, wrote a letter to the United States Attorney demanding arraignment.

■■ We are deeply disturbed by the government's conduct here. While there is little doubt that the right to a speedy trial "is consistent with delays and depends upon circumstances,"[3] the delays must serve some legitimate purpose. Here the government has no excuse for its conduct. In this case, where the result turned on eyewitness identifications which necessarily became less reliable with the passage of time, we think a delay of nine months is overly long absent a legitimate reason therefor.

The government contends, however, that time elapsed prior to defendant's de-

1. Scarcely worthy of mention is. the argument that three of the witnesses made erroneous photographic identifications prior to selecting defendant's picture. Miss Reilly testified that she pointed out four photographs of persons who were of the same "type" as the robber. Mrs. Whyte and Mrs. Palombo indicated two and one photograph, respectively that resembled the robber. In each of these instances it was clear that the witness did not purport to identify the robber but to assist the F.B.I. by pointing out someone who resembled him.

2. It also renders unnecessary a consideration of the effect of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3502 (Supp. IV, 1969), on the *Wade-Gilbert-Simmons* line of cases.

3. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966), quoting with approval from Beavers v. Haubert, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L.Ed. 950 (1905).

mand for arraignment cannot be counted in considering the claim of constitutional deprivation.[4] There is considerable difference of opinion as to the effect of a tardy demand. Although most federal courts hold that some demand is a prerequisite to a denial of speedy trial claim, we have found none which has dealt directly with the status of time elapsed prior to a demand. The American Bar Association has rejected the demand requirement in toto. ABA Project on Minimum Standards for Criminal Justice: Speedy Trial § 2.2, Commentary (App. Draft 1968). The conflict stems from two well-founded views. On one hand, the government surely has the obligation to bring an accused to trial and to dispose promptly of criminal cases. *E. g.*, Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684, 687–688 (1966). On the other hand, it cannot be doubted that delay in criminal cases often works to the advantage of the defense. United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963). It therefore has seemed anomalous to many courts to allow a defendant to silently acquiesce in delay by the government, reaping whatever benefits such a course may bring, and then suddenly move for dismissal at trial. *Cf.* Needel v. Scafati, 412 F.2d 761, 764 (1st Cir.), cert. denied, 396 U.S. 861, 90 S.Ct. 133,

24 L.Ed.2d 113 (1969); Fleming v. United States, 378 F.2d 502, 504 (1st Cir. 1967).

We agree with the view that a defendant may not sleep on his rights and then cry foul when that appears to be to his advantage. Thus, where a defendant is aware of his rights and implicitly consents to a delay by remaining silent we think that he cannot avail himself of the period preceding a demand for trial in support of a claim of constitutional deprivation. However, the key phrase here is "aware of his rights." If a defendant is without counsel it is all too likely that he will not know either that he is entitled to a speedy trial or that the failure to promptly demand the same may have serious adverse consequences. In such a situation, we think it inconsistent with recent trends concerning the waiver of constitutional rights to visit upon an accused the consequences of a late demand sought by the government.[5] *Cf.* Von Feldt v. United States, 407 F.2d 95, 98 (8th Cir. 1969); Pitts v. North Carolina, 395 F.2d 182, 187 (4th Cir. 1968). Accordingly, only such pre-demand delay as occurred after defendant secured the assistance of counsel will be disregarded unless it appears that the defendant was aware of his rights and the consequences of failing to demand trial.[6]

---

4. We note the distinction between waiver, which we use to denote going to trial without first seeking dismissal for lack of a speedy trial, and the demand doctrine, which holds that delay taking place prior to defendant's demand for speedy trial cannot be considered to show a constitutional deprivation. L. Hall, Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 906 (3d ed. 1969). Defendant adequately protected his right to raise the issue of denial of speedy trial. We are concerned here only with the demand doctrine.

5. *See, e. g.*, Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Note, Effective Guaranty of a Speedy Trial

for Convicts in Other Jurisdictions, 77 Yale L.J. 767, 779 (1968); Note, The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587, 1609 (1965).

6. This is consistent with Needel v. Scafati, *supra*. The issue there was whether there was sufficient evidence to support a state court finding of waiver (actually failure to demand trial, note 4, *supra*). While there was no evidence that the petitioner had the assistance of counsel, we relied upon the unrebutted representation by the state that petitioner knew of his rights and the conjunction of the notice provisions of Mass.Gen.Laws ch. 277, § 72A (Supp.1970), and the presumption of regularity in concluding that there was adequate evidence to support the state court's finding that the petitioner was aware of his right. Those factors are absent in the instant case.

In the case at bar there is substantial uncertainty as to defendant's awareness of his rights and when he was first represented by counsel. Attorney Travaline, counsel for the defendant, stated on oral argument and at a hearing in the district court that he was not retained in connection with this matter until June 14, 1969. His appearance was entered on June 17, 1969. However, it appears that he wrote a letter to the United States Marshal, dated January 21, 1969, requesting a copy of the indictment in this case and identifying himself as attorney for the defendant. That letter was never introduced into evidence and is not a part of the record on appeal.[7] Moreover, statements made on oral argument indicate that Attorney Travaline was representing the defendant on other matters during at least part of the period in question.

Given the uncertainty surrounding this issue, the lack of a proper record and of findings by the district court, we think it best to remand the case for the purpose of finding and reporting back to us Attorney Travaline's full relationship with the defendant in this and other cases and the defendant's awareness or lack of awareness of his right to a speedy trial.

Remanded for further findings.

7. Counsel erroneously included a copy in his record appendix.