Dewey Spencer GRAY,
Petitioner-Appellant,

v.

John T. KING, Secretary of Department of Corrections, State of Louisiana, and William J. Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.

No. 82–4544.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1984.

Walter J. Woodman (court-appointed), Shreveport, La., for petitioner-appellant.

William R. Coenen, Jr., Asst. Dist. Atty., Fifth Judicial Dist. Court, Parish of Richland, Rayville, La., Ivan L.R. Lemelle, Asst. Atty. Gen., New Orleans, La., for respondents-appellees.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

The appellant, Dewey Spencer Gray, seeks habeas corpus relief to invalidate his Louisiana state court conviction for attempted first degree murder and the sentence under that conviction to thirty years of hard labor. His claim for relief is that the State of Louisiana violated his constitutional right to a speedy trial because of the delay between his arrest and trial. After reviewing the record, the federal district court accepted the magistrate's determination and dismissed Gray's petition on the merits. We affirm.

Facts relevant to appellant's claim begin with his arrest on January 27, 1979, for aggravated battery and attempted murder committed the same day. He was indicted by the grand jury for these offenses on February 27, 1979. Because of these charges, Louisiana authorities also issued a detainer for Gray, who was on parole from an Alaskan murder conviction, as a parole violator. On March 14, in open court, Gray entered a plea of not guilty, and his trial was set for December 3, 1979, the second of two petit jury terms for that year, because the docket for the first term, scheduled for April, was full. Neither Gray nor his court-appointed attorney objected to the December date.[1]

Later, however, the state scheduled three special jury terms for June, July, and August, 1979. Cases disposed of during these sessions included those of several defendants whose offenses occurred after Gray's. Although Gray complained to his attorney in May and in June about the scheduling of his trial, neither expressed these concerns to the prosecutor or the court. His trial date did not change, and Gray remained in jail throughout the interval between his arrest and trial.

On December 3, 1979, the day set for Gray's trial, his second court-appointed attorney[2] moved to quash the indictment against Gray based on a denial of the appellant's right to a speedy trial. At a hearing on the motion, Gray testified that he had requested a speedy trial of his attorney in February, April, May, and June, 1979; his

---

1. Gray was represented at this hearing by an associate of his court-appointed attorney.

2. His first attorney was unable to continue representing Gray because a law partner was appointed an Assistant District Attorney. The change in attorneys took place in October, 1979.

first attorney also testified, but recalled only the June written request and one previous oral request, admitting that he did not transmit either request to the district attorney's office.

The state trial court found that Gray's rights had not been prejudiced and allowed his trial to proceed. In response to an appeal by Gray on the basis that his constitutional right to a speedy trial had been violated, the Louisiana Supreme Court affirmed his conviction in a per curiam decision without a formal opinion. *State v. Gray*, 391 So.2d 1184 (La.1980). In July, 1981, Gray initiated the present habeas corpus action in federal district court.

## THE SPEEDY TRIAL ANALYSIS

The Supreme Court has enunciated an ad hoc balancing process for resolution of speedy trial claims. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). In *Barker*, the Court identified four factors for assessing such claims: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.

### 1. The Length of the Delay

The length of the delay is a threshold consideration in reviewing speedy trial claims. *United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir.1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). This Court has indicated that the starting point for determining this time period is the arrest or indictment, whichever occurs first. *Hill v. Wainwright*, 617 F.2d 375, 377–78 (5th Cir.1980).

The question, therefore, is whether the ten and one-fourth month delay between Gray's arrest and trial is presumptively prejudicial, thus requiring an inquiry into the other *Barker* factors. In *United States v. Maizumi*, 526 F.2d 848, 851 (5th Cir.1976), this Court found that a ten and one-half month delay was not unreasonably long, noting that the other *Barker* factors were also not satisfied. What is acceptable in one case, however, may not be so in another; much depends on the complexity of the case. *See Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192. The manner of proof is another factor; a nine-month delay, for example, may be excessive in a case relying on eye-witness identification. *See United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir.1970).[3] A further consideration is the gravity of the alleged crime; a ten-month delay would be clearly excessive where the alleged offense can result in only a brief imprisonment.

Based on these considerations, we find that the delay in Gray's case was not excessive.[4] First, his offense, attempted murder, was a serious one, as evidenced by his sentence. Second, his conviction did not hinge on eye-witness testimony or similar proof; the victims knew Gray and there was substantial evidence to link him to the crime. Finally, the complexity of the case is at least equal to that in *Maizumi*, which involved a charge against a single defendant for possessing marihuana with intent to distribute it.

Because the acceptable length of delay may vary considerably, however, depending on the particular circumstances in a case,

---

3. The appellant relies on *Butler* to support his contention that ten months is excessive, noting that the Supreme Court cited this case in a footnote, *Barker v. Wingo*, 407 U.S. at 531 n. 31, 92 S.Ct. at 2192 n. 31. The Court did so, however, as an example of how the permissible length of delay is dependent upon the individual characteristics of the case. The considerations that pertained in *Butler* are not present in this case.

4. We reject the state's contentions during oral argument that the duration of delay in Gray's case is acceptable because it falls within Louisiana limitations for institution of prosecution, La.Code Crim.Proc.Ann. art. 572 (West 1981), or for commencement of prosecution, *id.* art. 578 (two years from the beginning of prosecution). The statutes show the outer limits prescribed by the legislature; they do not express a standard for assessing federal constitutional rights.

we do not end our inquiry here, but rather choose to examine the other *Barker* factors.

### 2. Reasons for the Delay

In *Barker,* the Court indicated that deliberate delaying tactics by the prosecution should weigh heavily against the government, while more neutral reasons such as negligence or overcrowding should weigh less heavily, although still be considered. 407 U.S. at 531, 92 S.Ct. at 2192. Gray does not contend, and there is no evidence that the prosecution purposely delayed his trial. The state's initial determination to fix his trial for December was based upon availability within its established docket. Gray has further conceded that the state cannot be faulted for not scheduling his trial for the April term.[5]

The appellant's arguments primarily concern, instead, the state's failure to reschedule Gray's trial for one of the special jury terms held in the summer of 1979. At the hearing before the state trial court, the prosecution offered several reasons for not doing so: Gray's case was already set; the cases initially scheduled for the summer terms preceded Gray's but were continued; and many of the cases handled during the terms were "filler" cases, which were less difficult and required less effort than Gray's.

These reasons, as well as the basis for the initial scheduling of the trial, fall in the neutral category identified by the *Barker* court; they serve to explain a delay, but do not justify it. While they must be considered, they should not weigh heavily in this case, particularly in view of Gray's initial acceptance of the December 3 trial date.

### 3. Assertion of the Right

The third factor is whether the appellant asserted his right to a speedy trial. Gray first raised the question of his speedy trial right before the court in the motion to quash on December 3, 1979, too late for a timely assertion. *See United States v. Avalos,* 541 F.2d at 1115. He argues, however, that this Court should consider his complaints to his attorney as assertions and, therefore, weigh this factor in his favor.[6] This argument has some merit. The balancing process developed by the Supreme Court allows a court to "attach a different weight to a situation in which a defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client . . . ." *Barker v. Wingo,* 407 U.S. at 529, 92 S.Ct. at 2191. Here, the record reflects that Gray requested his attorney to assert his right, but the attorney declined to do so, thus acquiescing in the delay. Because Gray's complaints reflect that he sensed some deprivation as a result of the scheduling of his trial, *see Barker v. Wingo,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93, we do not view him in the same light as a defendant who is silent as to his right.

For several reasons, however, we do not weigh this factor very heavily in Gray's favor. First, Gray was present at the initial setting of his trial date, but did not raise any objection. Second, his complaints to his attorney did not serve to put the prosecution on notice of his concern, an element this Court has recognized as important in assessing whether a defendant has asserted his speedy trial right. *See Prince v. Alabama,* 507 F.2d 693, 702, 703 n. 9 (5th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975) (eight years of unwar-

---

5. At oral argument, Gray's attorney admitted that this point had been conceded, but contended that the state nevertheless had a responsibility to try Gray earlier, regardless of the fixed terms. We do not hold that a state can insulate itself from a speedy trial claim because it schedules on the basis of two fixed terms a year. The primary responsibility to timely try the defendant rests with the state. *See Barker v. Wingo,* 407 U.S. at 529, 92 S.Ct. at 2191.

6. In support of this argument, Gray contends on this appeal that the trial court admonished him to go through his attorney, precluding any direct contact with the court or the prosecution. The only indication in the record that the court did so, however, is contained in a handwritten state habeas petition filed by Gray in July, 1980 in which he states that the court gave such an instruction during his *December* trial. The record reflects no attempt by the appellant to directly inform the prosecutor's

ranted delay).[7] Third, he did not respond to his attorney's letter of June, 1979, indicating that, while the defendant expressed concern about his trial date, he did not instruct his attorney to pursue this concern nor did he do so himself.

Even accepting Gray's complaints to his attorney as an assertion of his right, under the circumstances his efforts, however characterized, do not weigh decisively in his favor.

### 4. Prejudice

The *Barker* Court identified three interests of the defendant that a court should consider in assessing prejudice: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo, id.* 407 U.S. at 532, 92 S.Ct. at 2192.

Although Gray was in jail during the ten-month interval between his arrest and trial, two aspects of his case mitigate the potential oppressive effects of this incarceration. First, and of distinctly greater significance, Gray has received credit for the time so served, pursuant to Louisiana law, to be applied to his thirty-year sentence.[8] Second, although Gray, through his attorney, made a motion to reduce bond, he did not object to a ruling by the court indefinitely continuing a hearing on the motion.[9]

More important, Gray did not even *allege* before the state court in December, 1979 any prejudice as a result of the delay, but rather contended that prejudice was irrelevant because he satisfied the other *Barker* factors. On appeal to this Court, Gray does not claim prejudice, but rather asserts "whether he was prejudiced or not is irrelevant." This contention is wrong. Prejudice is irrelevant only when the other *Barker* factors weigh heavily in the defendant's favor. *Avalos,* 541 F.2d at 1116. Even presuming that the other factors weigh in Gray's favor, collectively they do not do so heavily. Nor is this a case where the delay is prima facie prejudicial, thus shifting the burden to the prosecution to show a lack of prejudice, because of an unexcused or a purposeful delay employed for tactical reasons. *Id.* at 1116–17. Gray had the burden to show prejudice. He failed to do so. No prejudice is apparent.

Our task in reviewing a speedy trial claim requires us to "engage in a difficult and sensitive balancing process." *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193. In this case, we find that the defendant's Sixth Amendment right to a speedy trial was not violated. The ten and one-fourth month delay was not excessive, and there was no government misconduct. Gray further failed to show or even allege prejudice, a

office or the court of his concerns before December 3.

**7.** Notice serves at least two important purposes in a speedy trial case. First, it allows the prosecution to react to the defendant's concern and, thus, to redress any deprivation. Second, it provides assurance that a defendant sincerely desires a speedy trial, an aspect we do not question in this case. *Prince* also notes that a relevant factor in evaluating an accused's assertion attempts is whether he was properly advised, by counsel or others. 507 F.2d at 703 n. 9. The Ninth Circuit found it sufficient that a defendant attempted to inform the prosecution when he sent his letter demanding a speedy trial to the wrong court because of incorrect information from prison officials. *See Chauncey v. Second Judicial Dist. Court, Washoe County, Reno, Nevada,* 474 F.2d 1238 (9th Cir.1973). A district court in this Circuit reached the same conclusion in similar circumstances. *Wylie v. Wainwright,* 361 F.Supp. 914 (S.D.Fla.1973). Notice is, thus, an important though not an absolute criterion.

**8.** Louisiana law mandates this result. La.Code Crim.Proc.Ann. art. 880 (West Supp.1982). Supplemental material submitted by the state at this Court's request during oral argument shows that the Louisiana authorities have computed the credit for the pretrial confinement.

**9.** One reason for his attorney's action in failing to pursue a reduction in the bond may have been the detainer imposed on Gray for violation of his parole from an Alaskan murder conviction. The detainer, which was initiated by the Louisiana authorities because of Gray's arrest in this case, suggests that he would have been incarcerated anyway. The record, however, does not adequately delineate the effects of the detainer in Gray's case.

crucial factor in the speedy trial analysis. We find no indication of prejudice. Even presuming that he asserted his rights and did so energetically, the balance does not shift in his favor. For these reasons, we affirm the decision of the district court.

AFFIRMED.