

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## 06-19-00172-CR

_____

### SHAMARCUS TORRELL CARTER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2019F00047

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Shamarcus Torrell Carter was convicted by a Cass County jury of family violence assault (FVA), with one prior conviction for FVA,[1] and was assessed a sentence of life imprisonment.[2] On appeal, Carter complains that (1) the trial court erred by overruling his *Batson*[3] challenges to the State's peremptory jury strikes; (2) the failure of the district clerk to include the venire panel list, jury strike lists, and the final seated jury list in the clerk's record is fundamental error; and (3) the trial court erred by denying his motion for a speedy trial.

Because we find that (1) Carter's *Batson* challenge was not preserved, (2) Carter's complaint about the omission of the venire panel list, jury strike lists, and the final seated jury list from the clerk's record presents nothing for our review, and (3) the trial court did not err in denying Carter's motion for a speedy trial, we affirm the trial court's judgment.

## I. Carter's *Batson* Challenges Were Not Preserved

Carter's first issue contends that the trial court erred in overruling his *Batson* challenges to the State's peremptory strikes of two African American veniremembers. The State argues, among other things, that Carter's *Batson* challenge was untimely and not preserved for appeal. We agree.

The record shows that, after the parties' examination of the jury panel, certain veniremembers were stricken for cause. The trial court then took a recess during which the

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (Supp.).

[2]Carter's punishment was enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42(d).

[3]*See Batson v. Kentucky*, 476 U.S. 79 (1986).

parties apparently prepared their peremptory challenges.  After the jury panel returned from the recess, the following exchange took place:

THE COURT:  All right, ladies and gentlemen. We're back on the record. What's going to happen at this point is Ms. Albertson's going to call your name. When she calls your name, if you'd step up into the jury box.  We're going to put No. 1 down on the front row here, go all the way to 6, start with 7 -- that's right, go to 7, back row, come back over this way to No. 13.  We're going to take one alternate juror on this matter.  Once we get everybody up here, we're going to swear in the jury.  All right.  You ready to proceed?

MS. ALBERTSON:  Yes, sir.

THE COURT:  All right.  You may call the jury.

MS. ALBERTSON:  [Each juror individually called].

THE COURT:  All right, ladies and gentlemen of the jury.  If I can have you please rise.  If you'll swear in our jury panel -- or, our jury, please.

(The jury is sworn.)

THE COURT:  All right.  You may have a seat.  All right, ladies and gentlemen.  Yes, ma'am?

[COUNSEL FOR DEFENDANT]:  Your Honor, may we approach?

THE COURT:  You can approach.

(At the Bench, outside the hearing of the jury)

[COUNSEL FOR DEFENDANT]:  I need to file a Batson challenge, --

THE COURT:  I'm sorry?

[COUNSEL FOR DEFENDANT]:  -- urge a Batson motion to the Court. I don't know if we want to do that outside the presence of the jury.

THE COURT:  Well no, we've got to do it right here, right now.

[COUNSEL FOR DEFENDANT]:  Okay.

3

THE COURT:  If it's -- any response from the state?

[COUNSEL FOR THE STATE]:  I don't know which -- who in particular she complained about.

THE COURT:  She's raised a Batson challenge.

[COUNSEL FOR DEFENDANT]:  There are --

[COUNSEL FOR THE STATE]:  Any specific --?

[COUNSEL FOR DEFENDANT]:  -- no people of the same color --

[SECOND COUNSEL FOR THE STATE]:  Your Honor, if I may --?

[COUNSEL FOR DEFENDANT]:  -- and Mr. Donnell [sic] was just --.

THE COURT:  You may -- hold on, hold on.

[COUNSEL FOR DEFENDANT]:  Okay.

THE COURT:  One at a time.

[SECOND COUNSEL FOR THE STATE]:  I think the timing for that to have worked out would have been when the strikes were submitted, and now they've already been seated and sworn.

[COUNSEL FOR DEFENDANT]:  I'm just now seeing who they struck.

THE COURT:  What's --?

[COUNSEL FOR DEFENDANT]:  Mr. --.

THE COURT:  I'm agreeing with Counsel.  I think once the jury's been sworn in, you've waived your Batson challenge.

[COUNSEL FOR DEFENDANT]:  Okay.

THE COURT:  If you want to make it for the record, go ahead and take it for the record, but Court gave a big long pause in between seating this jury and waiting for something to happen.

4

[COUNSEL FOR DEFENDANT]: Okay.

THE COURT: See if anybody was going to make that challenge, and nobody made a challenge. So --.

[COUNSEL FOR DEFENDANT]: Well, until I saw them, it was rather hard. I didn't have their races written on my notes. So --.

THE COURT: All right. You're going to have to speak up just a little bit so I can hear you.

[COUNSEL FOR DEFENDANT]: I did not have their races written on my notes, so it was kind of hard until I saw them seated as to who they were.

THE COURT: Okay.

[COUNSEL FOR DEFENDANT]: So --.

THE COURT: All right. So what do you want to do?

[COUNSEL FOR DEFENDANT]: I would just like to urge my Batson challenge that all of the people --.

THE COURT: All right. Any response to the Batson challenge?

[SECOND COUNSEL FOR THE STATE]: Just that the timing for the Batson challenge has passed, and now the trial has officially commenced because the jury has been seated and sworn in.

THE COURT: All right. I'm going to sustain the state's objection to the Batson challenge at this point. Nonetheless, because this is a fundamental constitutional issue, if you want to make an offer of proof at some point, the Court will give you an opportunity to make an offer of proof. Do you want to do that now?

[COUNSEL FOR DEFENDANT]: Yes.

Carter then objected to the State's striking Juror No. 6 and Juror No. 10, who were African

American. The State explained that it struck Juror No. 6 because her father was in prison for

5

raping her sister and she had a hard time believing he was guilty. According to the State, it struck Juror No. 10 because he stated that he would want to see DNA or physical evidence when the State did not anticipate offering this type of evidence and because he had two terroristic threat convictions, which was one of the charges involved in this case. The trial court then sustained the State's objection to the *Batson* challenge based on the timing of the challenge.

The United States Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids the use of peremptory challenges to strike potential jury members solely on account of their race. *Batson*, 476 U.S. at 89; *see* U. S. CONST. amend. XIV, § 1. The Texas Court of Criminal Appeals has recognized that the Supreme Court, in *Batson*, left the procedural mechanism for a *Batson*-based objection to the individual states. *Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992) (citing *Batson*, 476 U.S. at 100 n.24). The Texas Legislature codified *Batson* in Article 35.261 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 35.261; *Hill*, 827 S.W.2d at 863. The Texas Court of Criminal Appeals has "held that [A]rticle 35.261 was 'intended to create uniform procedures and remedies to address claimed constitutional violation during jury selection.'" *Hill*, 827 S.W.2d at 863 (quoting *Oliver v. State*, 808 S.W.2d 492, 496 (Tex. Crim. App. 1991)). "Therefore, whenever a claim is made that veniremembers were peremptorily challenged on the basis of their race, [A]rticle 35.261 must be followed." *Id*.

Article 35.261(a) provides, "After the parties have delivered their lists [of peremptory challenges] to the clerk . . . and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case." TEX. CODE CRIM. PROC.

6

ANN. art. 35.261(a). As a result, for a *Batson* challenge to be timely, it must be made after the parties have delivered their lists of peremptory challenges and "before the court has impanelled the jury."[4]  *Id*.; *see Hill*, 827 S.W.2d at 864. "A jury is considered 'impanelled' when the members of the jury have been both selected and sworn." *Hill*, 827 S.W.2d at 864 (citing *Price v. State*, 782 S.W.2d 266 (Tex. App.—Beaumont 1989, pet. ref'd)).

In his brief, Carter concedes that, to be timely, a *Batson* challenge must be made before the members of the jury have been impaneled and that his challenge was not made until after the jury was impaneled. Nevertheless, he argues that his challenge was timely because the record shows that his challenge was made as soon as the basis of the objection became apparent, citing *Lovill v. State*, 319 S.W.3d 687 (Tex. Crim. App. 2009).

In *Lovill*, the Texas Court of Criminal Appeals noted that, under the general preservation rule, "[a] party's complaint is regarded as timely when it was 'made as soon as the ground for complaint is apparent *or should be apparent*.'" *Id*. at 692 (emphasis added) (quoting *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000) (citing *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999); *Hollins v. State*, 805 S.W.2d 475, 477 (Tex. Crim. App. 1991))). Here, the record shows that, after the parties' peremptory challenges had been made, the trial court instructed the veniremembers that, as the district clerk called their names, they were to step into the jury box and be seated in the order that their names were called. It was only after the jury

---

[4]Carter argued that a *Batson*-based objection should be timely if, as in this case, the objection is made before the venire panel is discharged, citing *Henry v. State*, 729 S.W.2d 732, 737 (Tex. Crim. App. 1987), *superseded by statute*, TEX. CODE CRIM. PROC. ANN. art. 35.261, *as recognized in Hill*, 827 S.W.2d at 860. Although we recognize that *Henry* so held, the Texas Court of Criminal Appeals has held that "*Henry* is inapplicable to the timeliness of any equal protection claim arising from the racially discriminatory exercise of a peremptory challenge after the effective date of article 35.261." *Hill*, 827 S.W.2d at 864.

panel had been seated in the jury box that they were sworn. As a result, the basis for Carter's *Batson* challenge would have been apparent, at the latest, when the last-called juror was seated in the jury box and before the jury was sworn. Further, during the discussion at the bench after Carter's *Batson* challenge, the trial court noted that he had given a long pause after the jury was seated in the jury box to see if anyone was going to make a challenge to the jury. Therefore, even under the general preservation rule, Carter did not assert his *Batson* challenge as soon as the ground for the complaint should have been apparent. *See id*.

To preserve a complaint for appellate review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Since Carter's *Batson* challenge was made after the jury was selected and sworn, it was not timely. *See Hill*, 827 S.W.2d at 864. For that reason, he has not preserved this issue for appellate review.

## II.      Carter's Jury List Complaint Presents Nothing for Our Review

In his second issue, Carter asserts that the omission of the venire panel list, jury strike lists, and the final seated jury list from the clerk's record is fundamental error. Carter complains that, as a result of their omission, the appellate record (1) fails to establish that the parties' peremptory strikes were correctly applied and (2) fails to establish that the first twelve eligible jury panel members were seated on the jury. Pointing to statutes governing the seating of the jury and the duties of the district clerk to maintain records,[5] and to dicta in a few reported Texas

---

[5]Carter points out that the district clerk is required to "call off the first twelve names on the lists that have not been stricken" after the parties have delivered their jury strike lists to the district clerk, TEX. CODE CRIM. PROC. ANN. art. 35.26(a), and to maintain the records "lawfully deposited in the clerk's office," TEX. GOV'T CODE ANN. § 51.303(a). However, neither of these statutes require the district clerk to preserve the venire panel list, jury strike lists, and the

cases,[6] Carter argues that the complained-of omissions makes it impossible to determine whether the parties' peremptory strikes were correctly applied and whether the first twelve eligible jury panel members were seated on the jury. Consequently, he argues, the omission of the venire panel list, jury strike lists, and the final seated jury list from the clerk's record should be considered fundamental error.

Even so, Carter does not contend that the district clerk in this case did not correctly apply the parties' strike lists, that she did not correctly call off the first twelve names on the venire panel list that had not been stricken, or that the first twelve eligible jury panel members were not seated on the jury. In other words, Carter does not assert that any error occurred in the seating of the jury.[7] Thus, Carter asks this Court to render an advisory opinion on an issue that is unrelated

---

final seated jury list in its records. Carter does not cite, and we have not found, any other statute or rule that requires the district clerk to do so.

[6]*See Easterling v. State*, 710 S.W.2d 569 (Tex. Crim. App. 1986); *Pittman v. State*, 434 S.W.2d 352, 357–58 (Tex. Crim. App. 1968); *Miles v. State*, 644 S.W.2d 23 (Tex. App.—El Paso 1982, no pet.). In *Easterling*, the Texas Court of Criminal Appeals noted that, because the original jury list and the jury strike lists were not included in the appellate record, it was unable to determine whether the complained-of juror served as a juror or whether he was struck by either of the parties. *Easterling*, 710 S.W.2d at 576. In *Pittman*, the court recommended that, in capital felony cases, the appellate record include "the jury list indicating the jurors chosen, the ones excused and the reasons therefor, etc." *Pittman*, 434 S.W.2d at 358. In *Miles*, the El Paso Court of Appeals abated an appeal asserting ineffective assistance of counsel to the trial court for an evidentiary hearing and requested that the additional record "include, if available, the respective parties' jury cut list, the names of the jurors selected, and any jury information sheets used by counsel in selecting the jury in [that] case." *Miles*, 644 S.W.2d at 25–26. None of these case hold that the district clerk is required to preserve the venire panel list, jury strike lists, or the final seated jury list, nor do they hold that it is error to omit them from the clerk's record. Carter has not cited, and we have not found, any Texas cases that so hold.

[7]"It is well settled that it is the responsibility of the parties to assure that the jury impaneled does not include a juror that has been struck." *Jackson v. State*, 826 S.W.2d 751, 752 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd)); *see Biagas v. State*, 177 S.W.3d 161, 169 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Likewise, this same rule has been applied when a jury panel member's name who was not called by the clerk was mistakenly seated on the jury. *See Anderson v. State*, 154 S.W.2d 482, 482–83 (Tex. Crim. App. 1941); *Bagwell v. State*, 657 S.W.2d 526, 527 (Tex. App.—Corpus Christi 1983, pet. ref'd). Consequently, it is generally held that a party must object to the seating of a juror before the jury is sworn in order to preserve the complaint on appeal. *Harkey v. State*, 785 S.W.2d 876, 880–81 (Tex. App.—Austin 1990, no pet.).

to any claim of actual error that may have occurred in the trial of this case. However, we may not entertain hypothetical claims or render advisory opinions. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 911–12 (Tex. Crim. App. 2011). As a result, Carter's complaint about the omission of the jury lists from the clerk's record presents nothing for our review. We, therefore, overrule Carter's second issue.

## III.    No Trial Court Error in Denying Carter's Speedy Trial Motion

### A.    Standard of Review

Carter also complains that he was denied his constitutional right to a speedy trial when the trial court denied his motion for a speedy trial. We disagree.

"The Sixth Amendment to the United States Constitution provides, in relevant part, that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial.'" *Nguyen v. State*, 506 S.W.3d 69, 77 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). "That right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing U.S. CONST. amend. XIV; *Klopfer v. N. Carolina*, 386 U.S. 213, 223–26 (1967)). "The Texas Constitution likewise provides that . . . 'the accused shall have a speedy . . . trial.'" *Id.* (quoting TEX. CONST. art. 1, § 10).

The right to a speedy trial cannot be quantified in days or months. *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Consequently, we "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the *Barker v. Wingo* facts." *Cantu v. State*, 253

---

In addition, we are required to presume "that the jury was properly impaneled and sworn," unless it was disputed in the trial court or "the record affirmatively shows the contrary." TEX. R. APP. P. 44.2(c).

S.W.3d 273, 280 (Tex. Crim. App. 2008). "The court should inquire about (1) the length of the delay, (2) reasons for the delay, (3) the circumstances of the defendant's assertion of the right, and (4) any prejudice that resulted from the delay." *Nguyen*, 506 S.W.3d at 77 (citing *Barker*, 407 U.S. at 530). No one factor is determinative, "[i]nstead, the four factors are related and must be considered together along with any other relevant circumstances." *Cantu*, 253 S.W.3d at 281. The balancing test must be applied "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* (citing *Barker*, 407 U.S. at 534–35). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

"When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review." *Nguyen*, 506 S.W.3d at 77 (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.— Dallas 2005, pet. ref'd)). "[W]e review legal issues *de novo*[,] but give deference to a trial court's resolution of factual issues." *Id.* (quoting *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345). "We review a speedy trial claim in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Id.* (citing *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345). Under an abuse of discretion standard, we defer to the trial court's resolution of facts and reasonable inferences drawn therefrom, and we review the evidence in a light most favorable to the ruling. *Cantu*, 253 S.W.3d at 282.

11

### B.    Timeline

On or about September 7, 2017, Carter was arrested in Dallas County for the family violence assault on Dara Thomas that occurred on June 20, 2017, in Cass County.   On September 11, 2017, he was appointed counsel by the County Court at Law of Cass County.[8] Carter apparently remained in Dallas County custody until sometime in February 2019.   On January 16, 2019, Carter was indicted for the June 20 family violence assault, and a capias for his arrest was issued on January 30, 2019.   Carter was arrested by Cass County on February 27, 2019.

Although he was represented by appointed counsel, Carter filed a pro se motion for speedy trial on February 28, 2019.   In his motion, Carter alleged that he had been arrested on September 7, 2017, and had remained in custody since his arrest.   He also alleged that he had written a letter to the district attorney requesting a speedy trial, but a copy of the letter does not appear in the record.   Carter then alleged that he would be prejudiced if the trial was not held before April 29, 2019, because Thomas, who he alleged would testify on his behalf, would not be available to testify after March 29, 2019.   Finally, Carter requested that the trial court set the case to be tried on or before April 29, 2019.

---

[8]The record shows that Carter was appointed counsel pursuant to Article 1.051(c-1) of the Texas Code of Criminal Procedure.  Article 1.051(c-1) provides, in relevant part:

> If an indigent defendant is arrested under a warrant issued in a county other than the county in which the arrest was made and the defendant is entitled to and requests appointed counsel, a court or the courts' designee authorized under Article 26.04 to appoint counsel for indigent defendants in the county that issued the warrant shall appoint counsel within the periods prescribed by Subsection (c), regardless of whether the defendant is present within the county issuing the warrant and even if adversarial judicial proceedings have not yet been initiated against the defendant in the county issuing the warrant.

TEX. CODE CRIM. PROC. ANN. art. 1.051(c-1) (Supp.).

At a pretrial hearing on March 11, 2019, Carter entered a plea of not guilty and represented to the trial court that there was nothing further that needed to be taken up. At a pretrial hearing on April 8, 2019, the trial court informed Carter that it had received a handwritten motion from him and that it would not look at it since he was represented by counsel. His appointed counsel again represented to the trial court that there were no defense issues that needed to be taken up. On April 16, 2019, Carter filed a pro se motion to appear pro se. At a pretrial hearing on May 6, 2019, Carter's counsel announced that Carter wanted to try his case pro se and requested that he be allowed to withdraw as counsel. The trial court granted counsel's motion to withdraw and appointed new counsel for Carter.

At the next pretrial hearing, on June 3, 2019, Carter's new counsel announced that Carter had informed her that he wanted to represent himself. Yet, after Carter conferred further with his new counsel, he withdrew his motion to appear pro se. Afterward, Carter's counsel informed the trial court that there were no other pretrial issues that needed to be taken up. On June 13, 2019, Carter filed a pro se motion to dismiss prosecution in which he sought dismissal of the indictment based on alleged speedy trial violations.

The day before the trial began, at the final pretrial hearing on July 15, 2019, Carter's counsel announced that Carter wanted her to re-urge his motion for speedy trial. When the trial court noted that the basis of the motion was the unavailability of Thomas, the State informed the trial court that Thomas was available to testify. Carter's counsel then argued that the charges had been pending for twenty-five months and that he has not been able to work and provide for his children. His counsel also argued that Carter felt that he could have been working on a

13

pending matter in Dallas that had been pending since 2017 more effectively if this case had been resolved. His counsel also complained that the Dallas County assistant district attorney, who was assisting in the Cass County prosecution, would have "two bites at the apple" on his pending case in Dallas. After noting that the trial of the case would start the next day and that the basis of the written motion, i.e., the unavailability of Thomas to testify, was groundless, the trial court denied the motion.

### C.     Analysis

#### 1.      Length of Delay

The right to a speedy trial attaches once the defendant is either arrested or formally charged. *Cantu*, 253 S.W.3d at 280 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). "The *Barker* test is triggered by a delay that is unreasonable enough to be 'presumptively prejudicial.'" *Id*. at 281 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Although there is no set time that triggers a *Barker* analysis, the Texas Court of Criminal Appeals "ha[s] held that a delay of four months is not sufficient while a seventeen-month delay is." *Id*. (citing *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983)).

Carter was arrested on September 7, 2017,[9] and his trial began on July 16, 2019. This twenty-two-month delay was sufficient to trigger the *Barker* analysis and weighs in favor of finding a speedy trial violation.

---

[9]In its brief, the State asserts that Carter was not arrested until February 27, 2019. However, the record shows that he was arrested in Dallas County on this charge on September 7, 2017.

### 2.      Reason for Delay

Under this factor, "different weights should be assigned to different reasons" that give rise to the delay. *Barker*, 407 U.S. at 531. The State's "deliberate attempt to delay the trial" is weighed heavily against it. *Id*. Reasons such as the State's negligence for the delay or overcrowded courts are weighed less heavily against the State. *Id*. Valid reasons for the delay, on the other hand, are not to be weighed against the State. *Id*. "When the State offers no reason for the delay, this factor will weigh in favor of a finding of a violation of the right to a speedy trial." *Bosworth v. State*, 422 S.W.3d 759, 764 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Dragoo*, 96 S.W.3d at 314). "When no reason is offered, we may presume that the reason lies somewhere between a deliberate delay and a valid reason that would justify the delay." *Id*. (citing *Dragoo*, 96 S.W.3d at 314).

At the hearing on Carter's motion for a speedy trial, the State offered the trial court no reason for the delay.[10] Consequently, this factor also weighs in favor of finding a speedy trial violation. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

### 3.      Assertion of Right to a Speedy Trial

Although "[t]he defendant has no duty to bring himself to trial, . . . . [he] does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28). When the defendant fails to make a timely demand for a speedy trial, it is difficult for him to prevail on a claim that his right to a speedy trial was violated. *Shaw v. State*,

---

[10]In its brief, the State contends that Carter was in the custody of Dallas County from September 2017 to February 2019. However, it does not explain why this prevented the State from promptly indicting and trying Carter for this offense and obtaining his attendance at trial by bench warrant.

117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 532). "This is so because a defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one." *Id*. (citing *Dragoo*, 96 S.W.3d at 314). "Furthermore, the longer the delay becomes, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one." *Id*. (citing *Dragoo*, 96 S.W.3d at 314). "Thus, a defendant's inaction weighs more heavily against a violation the longer the delay becomes." *Id*. (citing *Dragoo*, 96 S.W.3d at 314). In addition, a defendant's failure to obtain a hearing and ruling on his speedy trial motion until shortly before trial also indicates that he wanted a dismissal, not a speedy trial. *See Dragoo*, 96 S.W.3d at 314–15; *Speights v. State*, No. 06-12-00137-CR, 2014 WL 1246074, at *5 (Tex. App.—Texarkana Mar. 26, 2014) (mem. op., not designated for publication),[11] *rev'd in part on other grounds*, 464 S.W.3d 719 (Tex. Crim. App. 2015).

Although Carter had been in jail since September 7, 2017, he did not file his pro se speedy trial motion until February 28, 2019, nine days after coming into Cass County's custody.[12] There is nothing in the record that would support a conclusion that Carter made any effort to seek a speedy trial before filing his pro se motion.[13] After the motion was filed, it was

---

[11]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[12]Since Carter was represented by counsel at the time, the trial court was free to disregard this pro se motion. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). However, when a trial court rules on a pro se motion, its ruling is subject to review on appeal. *Id*.

[13]Although Carter could not file a motion for speedy trial until he was formally charged, the right to a speedy trial can be asserted in other ways. *See Cantu*, 253 S.W.3d at 283. For instance, after he had been in custody in Dallas

16

not presented to the trial court at any of the ensuing monthly pretrial hearings until July 15, the day before trial began. Carter's almost eighteen-month delay in filing his motion and his delay in presenting the motion until the day before trial strongly indicate that Carter sought a dismissal, not a speedy trial. His June 13 motion to dismiss based on an alleged speedy trial violation also strongly suggests that Carter sought a dismissal, rather than a trial. We find that this factor weighs heavily against a finding of a speedy trial violation.

### 4. Prejudice

The defendant has the burden "to make some showing of prejudice which was caused by the delay of his trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (citing *Courtney v. State*, 472 S.W.2d 151 (Tex. Crim. App. 1971)). We analyze prejudice to the defendant "in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Cantu*, 253 S.W.3d at 285 (citing *Dragoo*, 96 S.W.3d at 316 (citing *Barker*, 407 U.S. at 532)). "Of these types of prejudice, the last is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Dragoo*, 96 S.W.3d at 316).

Carter was incarcerated for twenty-two months before his trial, the first seventeen of which were in Dallas County. There is no evidence in the record that Carter took any action to be released from incarceration during the first seventeen months. In addition, Carter's counsel

County for 180 days, he could have filed a motion to have the prosecution dismissed since no indictment had been presented. *See* TEX. CODE CRIM. PROC. ANN. art. 32.01(a) (Supp.).

intimated to the trial court that Carter had been in Dallas County custody on a matter pending in that county. Carter also received full credit for the time he spent in jail toward his sentence. We have recognized that any claim of prejudice is mitigated by the receipt of full-time credit. *See Reitz v. State*, No. 06-18-00088-CR, 2019 WL 961515, at *6 (Tex. App.—Texarkana Feb. 28, 2019, no pet.) (mem. op., not designated for publication) (citing *Porter v. State*, 540 S.W.3d 178, 184 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *State v. Davis*, 549 S.W.3d 688, 708 (Tex. App.—Austin 2017, no pet.); *U.S. v. Casas*, 425 F.3d 23, 34–35 (1st Cir. 2005); *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984)). We find that this subfactor is neutral.

Regarding the second subfactor, although Carter's counsel argued that he had not been able to work and support his children, there was no evidence introduced at the hearing that Carter had any children or what kind of support they may have had. There was also no evidence of the weightiest subfactor—that the delay of his trial had impaired his ability to prepare his defense. Consequently, Carter did not carry his burden to show some prejudice caused by the delay. Considering the three subfactors, we find that this factor weighs against a finding of a speedy trial violation.

### 5. Balancing the Factors

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo*, 96 S.W.3d at 316. The twenty-two-month delay in the trial, for which the State gave no reason, weighs in favor of finding a speedy trial violation. Nevertheless, Carter's delay in presenting his speedy trial motion until the day before trial and his filing of a motion to dismiss based on alleged speedy trial violations weigh heavily against his claimed violation. Moreover, Carter

18

failed to make a showing that the delay of his trial prejudiced him. Based on this record, we find that the trial court did not err in denying Carter's speedy trial motion. We, therefore, overrule Carter's third issue.

## IV.    Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:    July 29, 2020
Date Decided:    September 2, 2020

Do Not Publish